IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ELDRED BOGAN, AIS # 143522,         :

    Plaintiff,                      :

vs.                                 :    CIVIL ACTION 05-00540-BH-B

WARDEN DANIELS, *et al.*,           :

    Defendants.                     :

**REPORT AND RECOMMENDATION**

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis, filed a Complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). Based upon a careful review of Plaintiff's Complaint, it is recommended that Plaintiff's federal claims be dismissed with prejudice, as frivolous, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(I) and that the state law claims be dismissed without prejudice.

**I.  Complaint as Amended. (Docs. 5 & 16)**

Plaintiff initiated this action on September 16, 2005, and subsequent thereto, filed two Amended Complaints. (Docs. 1, 5, 16).[1]

---

[1] Plaintiff signed his original Complaint on September 16, 2005, and it was received by the Court on September 22, 2005. (Doc. 1). Following creation of the "mailbox rule" in Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 2382, 101 L.Ed. 2d 245

In Plaintiff's First Amended Complaint[2], he indicates that his claims occurred from February 2003 to April 2003 at the Camden Work Release.  (Doc. 5).  Plaintiff names as Defendants Warden Daniels, Naph Care, Inc., the Alabama Prison Commissioner, either Joe Hopper or his successor, Donal Campbell, Officer Chambers, and Officer Wright (Docs. 5, 16).  According to Plaintiff, while he was assigned to the Camden Work Release, he worked at Southern Pride Catfish (hereinafter "Southern Pride") in Demopolis, Alabama, from November 2002 through April 2003 (Doc. 16)[3].  Plaintiff alleges that he was instructed by Defendant Warden Daniels to lie about his health on the employment application so that he would be able to work at Southern Pride, and that Daniels told him that if he did not lie, he would be sent back to a major facility where he would

---

(1988), the Eleventh Circuit has considered section 1983 complaints "filed" when a *pro se* prisoner delivers one of them to a prison official for mailing. Vanderberg v. Donaldson, 259 F.3d. 1321 (11th Cir. 2001); Garvey v. Vaugh, 993 F.2d 776, 780 n.11 (11th Cir. 2001).

[2]Plaintiff's initial Complaint was filed on an outdated Court form.  Thus, Plaintiff was directed to file his Complaint on the current form, and was advised that the amended complaint would supersede his original complaint. (Doc. 4). Plaintiff filed a second Amended Complaint (Doc. 16) on July 31, 2006,  to correct what he deemed "errors" in his original complaint.

[3]In Plaintiff's first Amended complaint, he indicates that he worked at Southern Pride Catfish from November 2002 through February 2003 (Doc. 5); however, in his second Amended Complaint, he asserts he worked there from November 2002 through April 2003 (Doc. 16).

be locked up for a long time.  Plaintiff asserts that while working at Southern Pride, he started having asthma attacks on the job, and was eventually fired for lying on his application.

Plaintiff further asserts that from February through April 2003, he was experiencing severe asthma attacks, and that he advised Defendant Chambers that he was having difficulty breathing and that his inhalers were not helping.  According to Plaintiff, Defendant Daniels was contacted regarding Plaintiff's breathing difficulties, and he suggested that Plaintiff be placed in the drunk tank/holding cell in order for his asthma to calm down. Plaintiff asserts that his asthma worsened and that Officer Chambers, acting on instructions from Defendant Daniels, called Fountain Correctional Center ("Fountain") regarding Plaintiff's condition, but was advised that Plaintiff was too far gone to be transferred to Fountain.  Plaintiff asserts that as a result, Defendant Daniels ordered Defendant Chambers to determine if Plaintiff had sufficient money in his account for an ambulance ride to the hospital; however, Plaintiff did not possess sufficient funds.  Plaintiff further asserts that due to the fact that only one officer was on duty, another officer, Defendant Wright, was called in to work so Defendant Chambers could take Plaintiff to the Camden Hospital.[4]  Plaintiff asserts that due to the lengthy delay

---

[4]In the Second Amended Complaint (Doc. 16), Plaintiff states that Defendant Wright took him to the hospital.

in transporting him to the hospital, he lost consciousness and urinated and defecated on himself. Plaintiff also asserts that the doctor advised him that he nearly died due to the hour delay in transporting him for medical treatment.

Plaintiff further asserts that during the February, March, or April 2003 time frame, he had another asthma attack that caused him to be transported to Camden Hospital for treatment. According to Plaintiff, he asked the doctor if she could do anything for him, and upon learning that he was from Mobile, she advised him that the air in Mobile is thinner and that being closer to the coastline would be better for Plaintiff's condition. Plaintiff contends that the doctor conveyed this same information to the officer accompanying Plaintiff and recommended that Plaintiff be transferred as soon as possible.

According to Plaintiff, he went to speak with Defendant Daniels about the doctor's recommendation the following day; however, Defendant Daniels told him to "get out." Plaintiff contends that when he had another asthma attack, Defendant Daniels stated that Plaintiff was costing the State too much money and ordered that Plaintiff be taken to Fountain, which was a two-hour drive even though the hospital was ten minutes away. Plaintiff asserts that the doctor at Fountain gave him a profile that required he be transferred from Camden; however, he was returned to Camden, where he suffered another asthma attack. Plaintiff avers

that at the onset of the attack, he immediately went to the Shift Office because Defendant Daniels had ordered that Plaintiff be taken to Fountain instead of the hospital. According to Plaintiff, he was kept at Fountain for seven days before he was returned to Camden with another profile urging that he be transferred. Plaintiff contends that Defendant Daniels continued to ignore the profile until he was replaced[5] with a new warden who caused Plaintiff to be transferred to the Atmore Work Release where the frequency of his asthma attacks were reduced.

Plaintiff contends that Defendants Daniels, Chambers, and Wright were deliberately indifferent to his serious medical needs, and that Defendant Daniels deliberately delayed medical treatment for Plaintiff and forced him into unsuitable employment that caused his asthma to flare up.  Plaintiff alleges that Defendant Naph Care, Inc. did not have any employees on duty to meet his medical needs, and that the Defendant Commissioner did not provide Camden with Naph Care employees when Plaintiff's medical emergencies occurred during the February to June 2003 time frame.

Plaintiff further alleges that his rights under § 14-3-9 and § 14-3-13 of the Alabama Code were violated. (Doc. 16). According to Plaintiff, the former section requires that ADOC officers report

---

[5]Plaintiff maintains that Defendant Daniels was replaced because it was discovered that he was taking money from inmates' P.M.O.D. Accounts.  Thus, Plaintiff deduces that Defendant Daniels wanted as many inmates working as possible.

a violation of law, such as Defendant Daniels ordering Plaintiff to falsely complete the employment application, and the latter section contains an officer's oath that states a convict will not be ill-treated or abused, such as when "defendant" denied Plaintiff necessary medical treatment due to his concern about the cost. For relief, Plaintiff seeks $10 million in compensatory and punitive damages and declaratory relief regarding "standard operating procedure."

**II.   Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).**

Because Plaintiff is proceeding in forma pauperis, the Court is reviewing Plaintiff's Complaint as Amended under 28 U.S.C. § 1915(e)(2)(B).[6]  Under § 1915(e)(2)(B)(I), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32 (1989).  A claim is frivolous as a matter of law where, inter alia, the defendants are immune from suit, id. at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. Id.  Judges are accorded "not only the authority to dismiss [as frivolous] a claim based on an indisputably meritless legal theory,

---

[6]The predecessor to this section is 28 U.S.C. § 1915(d). Even though Congress made many substantive changes to § 1915(d) when it enacted 28 U.S.C. § 1915(b)(2)(B), the frivolity and the failure to state a claim analysis contained in Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989), was unaltered. Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.), cert. denied, 534 U.S. 1044 (2001); Brown v. Bargery, 207 F.3d 863, 866 n.4 (6th Cir. 2000).  However, dismissal under § 1915(e)(2)(B) is now mandatory.  Bilal, 251 F.3d at 1348-49.

but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id. Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. See Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)(noting that § 1915(e)(2)(B)(ii)'s language tracks the language of Fed.R.Civ.P. 12(b)(6))). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Id. at 1965. That is, the allegations must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966 (second brackets in original). "[L]abels and conclusions and a formulaic recitation of a cause of action's elements" are insufficient for grounds for entitlement to relief. Id. at 1959. However, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. Jones v. Bock, 127 S. Ct. 910, 920-21 (2007).

**III. Discussion.**

    **A. Federal Claims and § 1983's Statute of Limitations.**

The statute of limitations in a § 1983 action is borrowed from

7

a state's statute of limitations for personal injury actions because a § 1983 action is described as a constitutional tort action.  Wallace v. Kato, 127 S.Ct. 1091, 1094 (2007).  In Alabama, the statute of limitations for a personal injury action is two years; thus, in Alabama, the limitations period for a § 1983 action is two years.  Lufkin v. McCallum, 956 F.2d 1104, 1106, 1108 (11th Cir.), cert. denied, 506 U.S. 917 (1992); ALA. CODE § 6-2-38(l).  Even though state law determines the length of the limitations period, federal law governs when the statute of limitations begins to run, which is when the cause of action accrues.  Wallace, 127 S.Ct. at 1095.  Under federal law, "'[accrual occurs] when the plaintiff has 'a complete and present cause of action'' . . . that is, 'when plaintiff can file suit and obtain relief.'"  Id. (brackets in original)(citations omitted).

In the instant action, it is clear that Plaintiff knew of his claims against each Defendant at the time they took the alleged actions against him.  Giving Plaintiff the benefit of the various dates provided in his pleadings, the very latest date on which the alleged actions occurred was June 2003. Nonetheless, he did not initiate this action  until September 16, 2003 (Doc. 1), which, is more than two years after his claims accrued.  The Court includes June 2003 because Plaintiff mentioned it once but without supporting allegations.  Whereas, his other allegations reflect that Defendants' alleged actions were taken much earlier, that is,

from February to April 2003. (Doc. 16).[7]  Plaintiff was clearly aware of his claims at the time or near the time when the complained of actions occurred.  Accordingly, Plaintiff's federal claims are barred by the two-year statute of limitations.  For this reason, his federal claims are due to be dismissed as frivolous. Clark v. Georgia Pardons & Paroles Bd., 915 F.2d 636, 640 n.2 (11th Cir. 1990) (when an affirmative defense, such as the statute of limitations, would defeat a claim, the claim may be dismissed as frivolous); cf. Bock, 127 S. Ct. at 920-21 (when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, a complaint is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim).

   **B.  Supplemental Jurisdiction.**

Plaintiff has also alleged that Defendant violated his rights under Alabama law.  (Doc. 16 at 3).  District courts, however, have been advised to dismiss state law claims when no federal claims remain in the action.   28 U.S.C. § 1367(c)(3); Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."); Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000) (recommending that supplemental jurisdiction be declined because there are no

---

[7]Plaintiff also refers to a span of time from November 2002 to February 2003 in his original complaint.  (Doc. 5).

9

federal claims remaining in the action). Because Plaintiff's federal claims are recommended for dismissal, it is recommended that Plaintiff's state law claims be dismissed without prejudice and the Court decline to exercise supplemental jurisdiction over the state law claims.

**IV. Conclusion.**

Based upon the foregoing reasons, it is recommended that Plaintiff's federal claims be dismissed with prejudice, as frivolous, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(I) and that the state law claims be dismissed without prejudice.

The attached sheet contains important information regarding objections to the Report and Recommendation.

**DONE** this **23rd** day of **May, 2008**.

                                            **/S/ SONJA F. BIVINS**
                                            **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**.

11

Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                       **/S/ SONJA F. BIVINS**
                                    **UNITED STATES MAGISTRATE JUDGE**